UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OMAR MAUSO LASSO,

      Petitioner,

v.                                        Case No. 2:26-cv-918-JES-NPM

SOUTH FLORIDA DETENTION
FACILITY, et al.,

      Respondents.

_____/

## OPINION AND ORDER

Before the Court are Petitioner Omar Mauso Lasso's petition for writ of habeas corpus (Doc. 1) and the government's response (Doc. 11).  For the below reasons, the Court grants the petition to the extent set forth in this Order.

### I.   Background

Mauso Lasso is a native and citizen of Cuba who became a legal permanent resident of the United States on June 13, 2000.  (Doc. 11 at 2).  He was convicted of attempted trafficking in marijuana in North Carolina on April 2, 2018.  (Id.).  On September 22, 2019, he arrived at the Miami International Airport and applied for admission as a legal permanent resident.  (Id.).  He was issued a notice to appear on March 2, 2020.  (Id.)

On March 19, 2020, Mauso Lasso was ordered removed and placed on an order of supervision.  (Doc. 11 at 2).  He was taken into

custody by Immigration and Customs Enforcement (ICE) on November 3, 2025 when he reported for his yearly check in.  (Doc. 1 at 2).

When he filed this petition, Mauso Lasso had been in ICE custody for 141 days.  (Id.)  As of May 7, 2026, he has been confined for 188 days.

## II.  Discussion

### A.    The Court has jurisdiction to consider Mauso Lasso's claims.

Respondents argue that the Court lacks jurisdiction to consider this petition.  (Doc. 11 at 3).  They point to a provision that bars courts from hearing certain claims that states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  But this jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that

technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves.").  "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  But the zipper clause only applies to claims requesting review of a removal order.  See Madu v. U.S. Attorney Gen., 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Mauso Lasso does not challenge the commencement of a

proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, he challenges the legality and length of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply. See Zadvydas, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Mauso Lasso's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

**B.   Mauso Lasso's continued detention violates the Supreme Court's framework in Zadvydas v. Davis.**

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal

is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.

Here, Respondents assert (and the Court agrees) that Mauso Lasso was given a final order of removal in 2020. He has now been in immigration custody for 188 days, since November 3, 2025. Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies.

Respondents make no argument that Mauso Lasso's removal is likely in the reasonably foreseeable future. They do not allege that any country has agreed to accept Mauso Lasso—or that they have even inquired about that possibility—and they do not explain

why no progress has been made on that front in the 188 days since Mauso Lasso was taken into detention. In short, they do not demonstrate that they have done anything at all to effectuate Mauso Lasso's removal in the 188 days he has been detained in immigration custody. Under, Zadvydas, this is insufficient to show a realistic likelihood of Mauso Lasso's removal in the reasonably foreseeable future.[1] See Douglas v. Baker, 812 F.Supp.3d 525, 532 (D. Maryland Oct. 24, 2025) ("[T]he deference baked into the Zadvydas standard does not permit the government to detain a noncitizen and then sit on its hands. Such inaction, or lack of progress in effectuating removal, is precisely what Zadvydas forbids.")

## III. Conclusion

The Court finds no significant likelihood that Mauso Lasso will be removed in the reasonably foreseeable future. He is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If Mauso Lasso

---

[1] See 8 C.F.R. 241.13(f) ("Factors for consideration [as to whether there is a significant likelihood of removing a detained alien]. The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.").

fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Mauso Lasso to "assur[e] [his] presence at the moment of removal."  Zadvydas, 533 U.S. at 680.

Accordingly, it is hereby

ORDERED:

1.   Omar Mauso Lasso's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

2.   Respondents shall release Mauso Lasso within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.   The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on May 7, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7